IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| CURTIS G. MARKVARDSEN, | Case No. 3:13-cv-00046-SI |
| Plaintiff, | OPINION AND ORDER |
| v. | |
| CAROLYN W. COLVIN,<br>Acting Commissioner of Social Security, | |
| Defendant. | |

Merrill Schneider, Schneider Kerr & Gibney, P.O. Box 14490, Portland, OR 97293. Of Attorneys for Plaintiff.

Amanda Marshall, United States Attorney, and Adrian L. Brown, Assistant United States Attorney, U.S. Attorney's Office, District of Oregon, 1000 S.W. Third Avenue, Suite 600, Portland, OR 97204; Jordan D. Goddard, Special Assistant United States Attorney, Office of the General Counsel, Social Security Administration, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, WA 98104. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

Curtis G. Markvardsen ("Markvardsen" or "Plaintiff") seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for disability insurance benefits ("DIB"). For the following reasons, the Court AFFIRMS the Commissioner's decision.

PAGE 1 – OPINION AND ORDER

## STANDARDS

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla but less than a preponderance." *Bray v. Comm'r Soc. Sec. Admin.,* 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala,* 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

Where the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the Commissioner. *See Batson v. Comm'r*, 359 F.3d 1190, 1193 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quotation marks omitted)). A reviewing court, however, may not affirm the Commissioner on a ground upon which the Commissioner did not rely. *Id.*; *see also Bray*, 554 F.3d at 1226.

## BACKGROUND

### A.  Plaintiff's Application

Mr. Markvardsen is currently 56 years old. On March 15, 1997, he applied for DIB, alleging a disability onset date of August 14, 1991, which is several years before his date last insured of December 31, 1996. AR 37, 41, 154. In 1997, Markvardsen's March 1997 application was denied by the Commissioner ("1997 Determination"), and Markvardsen did not submit a

request for an appeal. AR 154. On February 16, 2005, Markvardsen filed another application for DIB ("February 2005 Application"), again alleging a disability onset date of August 14, 1991. AR 141-43. Markvardsen's February 2005 Application was denied on February 21, 2005, and again on reconsideration on May 13, 2005. AR 89-91, 85-87. On April 3, 2005, Markvardsen's wife filed a Disability Report-Appeal that indicated Markvardsen was filing for reconsideration and that his alleged disability had gotten worse since his last completed disability report from February 21, 2005. AR 148-51. Markvardsen filed a request for a hearing on July 12, 2005. AR 154. On August 30, 2005, the ALJ dismissed Markvardsen's request for a hearing on the basis of *res judicata*. AR 165-66. This dismissal was subsequently vacated by the ALJ on September 30, 2005. AR 153-54.

On June 17, 2008, the ALJ conducted a hearing to address Markvardsen's February 2005 Application and to determine if the 1997 Determination should be reopened. AR 50, 65, 562-71.[1] The ALJ issued an opinion on September 23, 2008, both declining to reopen the 1997 Determination and finding Markvardsen not disabled for the February 2005 Application. AR 37-45. On November 24, 2008, Markvardsen appealed the ALJ's decision to the Appeals Council. AR 99-100. On October 27, 2009, the Appeals Council remanded the case for a new hearing because it could not locate the recordings of the June 17 and August 7, 2008 hearings. AR 46-49. After holding another hearing on January 25, 2011, the ALJ issued a decision on January 28, 2011 ("2011 Determination"), denying both Markvardsen's request to reopen the 1997 Determination and denying his February 2005 Application. AR 19-27, 609-33. Markvardsen appealed the ALJ's 2011 Determination decision to the Appeals Council. AR 14-15. On April 20, 2012, the Appeals Council denied the request for review, making the ALJ's decision

---

[1] This hearing was continued at a supplemental hearing on August 7, 2008. AR 572-608.

the final decision of the Commissioner. AR 11-13. Markvardsen now seeks judicial review of that decision.

## B.  The Sequential Analysis

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R. § 404.1520 (DIB); 20 C.F.R. § 416.920 (SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4). The five-step sequential process asks the following series of questions:

1.  Is the claimant performing "substantial gainful activity?" 20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. §§ 404.1510; 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2.  Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a); 416.921(a). Unless expected to result in death, this impairment must have lasted or be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509; 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3.  Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so,

then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii); 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis continues. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" ("RFC"). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e); 404.1545(b)-(c); 416.920(e); 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4.      Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5.      Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v); 404.1560(c); 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140-41. The Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566; 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant

PAGE 5 – OPINION AND ORDER

numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54; *Tackett*, 180 F.3d at 1099.

## C. The ALJ's Decision

The ALJ performed the sequential analysis in his January 28, 2011 decision. AR 21-27. At step one, the ALJ found that Markvardsen did not engage in substantial gainful activity from his alleged onset date of August 14, 1991, through December 31, 1996, his date last insured. AR 23. At step two, the ALJ concluded that Markvardsen's vertigo, headaches, and nausea secondary to perilymph fistula were a severe combination of impairments. AR 24. At step three, the ALJ found that Markvardsen did not have an impairment or combination of impairments that met or equaled the requirements of a listed impairment. *Id.*

The ALJ next addressed Markvardsen's RFC. The ALJ found that, through Markvardsen's date last insured, he had retained the capacity to perform a full range of medium exertion and simple work. AR 24-26. Specifically, the ALJ found that Markvardsen could sit, stand, and walk for six hours out of an eight-hour day and perform simple, routine tasks. AR 24. In reaching this conclusion, the ALJ considered Markvardsen's symptom testimony and the treatment records of Markvardsen's two treating physicians for the relevant time period, Dr. Jura and Dr. Black. AR 25-26. The ALJ gave significant weight to Dr. Black's opinion that Markvardsen should avoid heavy labor. AR 26. The ALJ gave little weight to Dr. Jura's opinion that Markvardsen's fatigue, headaches, and vertigo were disabling. *Id.*

At step four, the ALJ determined that Markvardsen's RFC rendered him unable to perform his past relevant work as a utility worker. AR 26. At step five, the ALJ relied on the Medical-Vocational Guidelines and found that based on Markvardsen's RFC for medium exertion, unskilled work and considering his age, education, and work experience, a finding of

"not disabled" was directed by Medical-Vocational Rule 203.29. AR 26-27. Thus, the ALJ found Markvardsen to be not disabled, as defined in the Social Security Act. *Id.*

## DISCUSSION

The Commissioner argues that this Court lacks subject matter jurisdiction because the ALJ's 2011 Determination was a refusal to reopen the 1997 Determination and a refusal to reopen is not a final decision under 42 U.S.C § 405(g). Markvardsen argues that, because the ALJ proceeded to address the merits of Markvardsen's February 2005 Application, the ALJ's 2011 Determination is a final decision over which this Court has jurisdiction. On the merits, Markvardsen argues that the ALJ failed properly to consider relevant opinions of two treating physicians. The Court addresses each issue in turn.

### A. The Commissioner's Jurisdictional Objection

Section 405(g) of Title 42 of the United States Code constrains federal courts' subject matter jurisdiction over social security cases, limiting judicial review to "final decision[s] of the Commissioner of Social Security made after a hearing." 42 U.S.C. § 405(g); *see Johnson v. Shalala*, 2 F.3d 918, 920-21 (9th Cir. 1993). "'[T]he Secretary's decision not to re-open a previously adjudicated claim for social security benefits' is purely discretionary and is therefore not considered a 'final' decision within the meaning of § 405(g)." *Krumpelman v. Heckler*, 767 F.2d 586, 588 (9th Cir. 1985) (quoting *Davis v. Schweiker*, 665 F.2d 934, 935 (9th Cir. 1982). "District courts, therefore, have no jurisdiction to review a refusal to re-open a claim for disability benefits or a determination that such a claim is res judicata." *Id.* (citing *Davis*, 665 F.2d at 935). When determining whether a district court has jurisdiction, the United States Court of Appeals for the Ninth Circuit has explained "that where the discussion of the merits *is followed by* a specific conclusion that the claim is denied on res judicata grounds, the decision should not

be interpreted as re-opening the claim and is therefore not reviewable." *Krumpelman*, 767 F.2d at

589 (emphasis added) (citing *McGowen v. Harris*, 666 F.2d 60, 68 (4th Cir. 1981)).

Based on Social Security Administration Ruling 91-5p ("SSR 91-5p"), the ALJ

determined that Markvardsen did not present "good cause" for failure to request timely review of

the 1997 Determination. *See* SSR 91-5p, 1991 WL 208067 (July 1, 1991). In making a

determination under SSR 91-5p, an ALJ must consider the following four factors relating to a

claimant: (1) inability to read or write; (2) lack of facility with the English language; (3) limited

education; and (4) any mental or physical condition that limits the claimant's ability to do things

for himself. SSR 91-5p, 1991 WL 208067, at *2. The ALJ found that Markvardsen is sufficiently

proficient in reading and writing English and that he has a high school education. AR 22.

Additionally, the ALJ found that there was neither evidence of an intellectual impairment nor

evidence that Markvardsen was incapacitated to the point of being unable to pursue his claim.

AR 23. Thus, the ALJ concluded that Markvardsen did not demonstrate symptoms or

circumstances sufficient to explain the seven-and-a-half year delay in his request for reopening,

and the ALJ declined to reopen the 1997 Determination. AR 23. The ALJ did not, however, end

his decision with a refusal to reopen the 1997 Determination. *See* AR 23-27.

The ALJ proceeded to analyze the merits of Markvardsen's "current application," after

finding that there was not good cause to reopen the 1997 Determination. AR 23. In *Krumpelman*,

the Ninth Circuit found that the district court did not have jurisdiction over an ALJ's refusal to

reopen a prior determination because the ALJ explicitly determined, after discussing the

claimant's impairments, that the evidence was insufficient to warrant a reopening. *Krumpelman*,

767 F.2d at 589. Here, however, the ALJ proceeded fully to address the merits of Markvardsen's

February 2005 Application, which alleges the same disability onset date and date last insured as

those addressed in the 1997 Determination. AR 23-27. Additionally, the ALJ did not indicate that he was reviewing Markvardsen's February 2005 Application to aid in his consideration of the reopening issue. *Id.* Thus, the ALJ's decision here is distinguishable from the ALJ's decision in *Krumpelman* over which the district court did not have jurisdiction. *See id.*; *see also Oberg v. Astrue*, 472 F. App'x 488, 489-90 (9th Cir. 2012) (unpublished) (explaining that the district court did not have jurisdiction over an ALJ's decision when the ALJ made a specific decision not to reopen the previous claim and considered the record only to determine if there had been a substantial change in claimant's condition to warrant a reopening).

Moreover, *res judicata* "does not apply when an ALJ later considers 'on the merits' whether the claimant was disabled during an already-adjudicated period." *Lewis v. Apfel*, 236 F.3d 503, 510 (9th Cir. 2001). Therefore, when an ALJ *de facto* reopens a prior adjudication in such a manner, "the Commissioner's decision as to the prior period is subject to judicial review." *Id.* at 509-10; *see also Lester v. Chater,* 81 F.3d 821, 827 n.3 (9th Cir. 1995) ("There is an exception to the general rule that courts may not review the Commissioner's decision not to reopen, where the Commissioner considers 'on the merits' the issue of the claimant's disability during the already-adjudicated period. Where such a *de facto* reopening occurs, the Commissioner's decision as to the prior period is subject to judicial review." (citations and quotation marks omitted)). Similarly, here, because the ALJ analyzed the merits of Markvardsen's February 2005 Application following the ALJ's decision not to reopen the 1997 Determination, this Court has jurisdiction over the ALJ's 2011 Determination.

## B. Markvardsen's Objections to ALJ's Findings

Markvardsen argues that the ALJ erred in his treatment of the opinions offered by the two treating physicians, Dr. Jura and Dr. Black. An ALJ must determine the weight to give each source of evidence. 20 C.F.R. §§ 404.1527(d), (e); 416.927(d), (e). "[I]f a treating physician's

medical opinion is supported by medically acceptable diagnostic techniques and is not inconsistent with other substantial evidence in the record, the treating physician's opinion is given controlling weight." *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001) (citing 20 C.F.R. § 404.1527(d)(2)). Both Dr. Jura and Dr. Black were Markvardsen's treating physicians during the relevant time period. AR 568-69, 578. The ALJ's decisions to give significant weight to Dr. Black's opinion that Markvardsen should avoid heavy labor and to give little weight to Dr Jura's opinion regarding Markvardsen's disability are supported by substantial evidence in the record, and this Court will not substitute its judgment for that of the ALJ's. *See Burch*, 400 F.3d at 679.

### 1. The ALJ Gave Proper Weight to the Opinion of Dr. Black

Markvardsen argues that the ALJ "dramatically truncat[ed]" Dr. Black's treatment notes, and "therefore, the ALJ's conclusion that Dr. Black's opinion was limited to restricting [Markvardsen] from engaging in heavy work is not consistent with Dr. Black's actual words." Pl.'s Br., ECF 13, at 11. ["P]hysicians may render medical, clinical opinions, or they may render opinions on the ultimate issue of disability—the claimant's ability to perform work." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998). Additionally, an ALJ may give more weight to the opinion of specialists concerning matters relating to their specialty over that of nonspecialists. *Holohan*, 246 F.3d at 1202.

Dr. Black, a neurotology specialist, performed surgery on Markvardsen's perilymph fistula in July 1987 and continued occasionally to see Markvardsen until 1993. AR 216-17, 238-49. Following the surgery, Dr. Black authored three letters dated October 30, 1987, January 27, 1988, and July 22, 1988, that stated Markvardsen could return to work part time and, later, that he could go to work full time if he avoided lifting and physical activity and worked "within the limits of his fistula symptoms." AR 245-47. Before Markvardsen's surgery in 1987 and up until

1991, Dr. Black, along with several other medical professionals from Good Samaritan Hospital and Medical Center, conducted a series of tests on Markvardsen relating to his fistula, vertigo, headaches, and dizziness. AR 228, 239-44, 258-69, 270-84. These tests included electrocochelography ("ECoG") tests that measure inner ear functioning. AR 228, 239-44, 264, 270-84. In his RFC determination, the ALJ relied, in part, on the results from the ECoG tests that indicated Markvardsen's ear functioning was normal. AR 25. These tests provided Dr. Black with an extensive understanding of Markvardsen's symptoms and functional limitations.

According to Dr. Black's notes from a physical examination conducted on July 3, 1990, Markvardsen indicated his symptoms were making it difficult for him to work. AR 242-44. In a physical examination on October 22, 1991,[2] Dr. Black noted that restricted activity brought about marked improvement in Markvardsen's symptoms, but that returning to work caused his symptoms to return "full force." AR 240-41. Dr. Black also explained that he thought Markvardsen could return to work if he was retrained to do lighter work. *Id.* In an "Office Visit Note" dated October 29, 1991, Dr. Black further noted that Markvardsen's symptoms were exacerbated with exertion, but that they improved with restricted activity and that he should not attempt a job that requires heavy labor. AR 239. In another "Office Visit Note" dated February 11, 1993, Dr. Black commented that after Markvardsen's last visit in October 1991, he appeared to have become more sensitive to weather changes and that Markvardsen needed to limit his activities. AR 238.

The ALJ's decision included multiple references to the tests conducted and symptoms observed by Dr. Black. AR 25. The ALJ reviewed the treatment record and considered Markvardsen's vertigo, headaches, and sensitivity to light in determining the RFC. *Id.* Thus, the

---

[2] The ALJ cited to this examination as having occurred in October 2001. AR 25-26. The record reveals that the examination occurred on October 22, 1991. AR 240-41.

ALJ did not merely account for Dr. Black's opinion on the ultimate issue of Markvardsen's disability, but also incorporated the symptoms reflected in the treatment record. *Id.* Additionally, Dr. Black had an extensive knowledge of Markvardsen's symptoms that was well-documented through personal observations and testing. Given that Dr. Black was a treating physician and a specialist in the field of neurotolgy, in combination with the substantial evidence in the record that supports Dr. Black's assertions about Markvardsen's disability, it was reasonable for the ALJ to give significant weight to Dr. Black's opinion that Markvardsen should avoid heavy labor. *See Holohan*, 246 F.3d at 1202; *Reddick*, 157 F.3d at 725.

### 2.  The ALJ Did Not Err in Giving Little Weight to the Opinion of Dr. Jura

Markvardsen also argues that the ALJ erred in giving little weight to Dr. Jura's opinion that Markvardsen was disabled. The Ninth Circuit has explained that "[a] treating physician's evaluation of a patient's ability to work may be useful or suggestive of useful information, but a treating physician ordinarily does not consult a vocational expert or have the expertise of one." *McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011). Therefore, the Ninth Circuit made the important distinction between an impairment, which is a purely medical condition, and a disability, which is an administrative determination of how an impairment affects the claimant's ability to engage in gainful activity. *Id.* Although a physician may offer an opinion on disability in light of a claimant's impairments, the law reserves the ultimate disability determination to the Commissioner. 20 C.F.R. § 404.1527(d)(1). Here, the ALJ provided two specific reasons for affording little weight to the opinion of Dr. Jura that Markvardsen was disabled: (1) Dr. Jura's opinions involved vocational issues of which he has no expertise; and (2) his opinions lacked specific functional limitations caused by Markvardsen's impairments. AR 26.

Dr. Jura was Markvardsen's treating general care physician from 1984 through 2000. AR 569. In 1991, Dr. Jura submitted multiple letters and forms to Oregon's Public Employment

Retirement System ("PERS"), in which he opined that Markvardsen's vertigo and headaches due to his perilymph fistula rendered him unable to work. *See* AR 307, 308-11, 312. In a letter dated October 28, 1991, Dr. Jura specifically mentioned that after the 1987 surgery to attempt to repair Markvardsen's fistula he still experienced vertigo, dizziness, headaches, and balance problems that never fully abated. AR 308. Following that letter, Dr. Jura submitted several supplemental statements to PERS in August 25, 1992 (AR 304), October 3, 1993 (AR 302), October 28, 1993 (AR 301), February 28, 1993 (AR 303), February 5, 1994 (AR 300), and March 8, 1995 (AR 299). In these statements, Dr. Jura continued to list perilymph fistula, permanent inner ear damage, vertigo, nausea, and headaches as the reasons why Markvardsen was unable to work, without explaining the functional limitations caused by these impairments.

In 1997, Dr. Jura wrote a letter stating that Markvardsen's impairments were "moderately controlled with medication as long as he refrain[ed] from any kind of physical activity." AR 296-97. Dr. Jura considered Markvardsen "100% disabled from this condition and completely unemployable in any situation." *Id.* In that same letter, Dr. Jura stated that Markvardsen had "symptoms of intermittent sporadic and unpredictable vertigo as well as attendant symptoms of depression and anxiety." *Id.* Overall, Dr. Jura's letters and statements consistently describe Markvardsen as disabled, but do not provide the same detailed assessment of his symptoms and functional limitations as those provided by Dr. Black.

A lack of articulated reasons for a particular finding by a physician is a specific and legitimate reason to give greater weight to a more detailed assessment. *See, e.g.*, *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005); *Connett v. Barnhart*, 340 F.3d 871, 875 (9th Cir. 2003); *see also* 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3) (indicating that the weight afforded to a physician's testimony depends on "the degree to which they provide supporting

explanations for their opinions"). Because Dr. Jura's opinions do not provide a detailed assement of Markvardsen's limitations, the ALJ did not err in affording Dr. Jura's conclusion that Markvardsen is disabled less weight than the specific restriction to avoid heavy labor provided by Dr. Black. In giving Dr. Jura's opinion less weight than that of Dr. Black, the ALJ offered the specific and legitimate reasons that Dr. Jura lacks expertise on vocational issues and that his opinions had an absence of articulated functional limitations caused by Markvardsen's impairments. AR 26. These reasons are valid and supported by substantial evidence on the record as a whole. *See Mcleod*, 640 F.3d at 885; *Reddick*, 157 F.3d at 725; *see also* 20 C.F.R. § 404.1527(c)(2).

Moreover, the ALJ did not reject Dr. Jura's opinion outright; he simply gave it less weight than that of Dr. Black's opinion. Under the regulations, more weight is to be given to opinions that are explained than to those that are not, 20 C.F.R. § 404.1527(c)(3), and to the opinion of specialists concerning matters relating to their specialty over that of nonspecialists. *See Holohan*, 246 F.3d at 1202. Dr. Black's opinions were supported by specific functional limitations and extensive testing. These explanations viewed in light of Dr. Black's position as both a treating physician and a specialist demonstrate that the ALJ's conclusion to give more weight to Dr. Black's opinion than to Dr. Jura's opinion was reasonable and supported by substantial evidence in the record.

**CONCLUSION**

The Court AFFIRMS the Commissioner's decision that Plaintiff was not disabled

through his date last insured.

**IT IS SO ORDERED**.

DATED this 28th day of April, 2014.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge